**Floyd BATES, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

**No. 3–285A29.**

Court of Appeals of Indiana,
Third District.

Dec. 17, 1985.

---

**1.** Seavey, *Law of Agency* (1964), Section 6, relied upon in *Burkett.*

Daniel L. Bella, Appellate Div., Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Presiding Judge.

Floyd Bates (Bates)[1] was convicted by a jury of Burglary, a Class C felony. Bates was sentenced to five (5) years imprisonment for his part in the break-in of a grocery store. Bates raises the following issues which we have rephrased:

(1) Was it error for the trial court to admit into evidence Bates' written statement, which was made after being given his *Miranda* warnings,[2] because Bates was questioned by police before *Miranda* warnings were given to him;

(2) Did the trial court err by denying Bates' Motion for Directed Verdict because the information charging Bates incorrectly named the manager of the grocery store as the owner, rather than the true owner of the store property; and

---

1. Bates is also known as "Chinaman."

2. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (interrogation rules in light of Fifth Amendment guarantee against self incrimination).

(3) Was the jury's verdict supported by sufficient evidence?

Affirmed.

## I.

### Written Statement

Cameras inside the grocery store recorded the break-in. A police detective who viewed the film determined that Bates was one of three men who entered the grocery store and removed property without the owner's permission. The detective later went to the house where Bates lived.

At the house, the detective spoke to Bates and his mother. Bates testified that at the house the detective accused him of participating in the grocery store break-in, but he denied those accusations. He further testified that while the detective was in the home, he asked him no direct questions, and no confession was volunteered. Bates also admitted at trial that most of the conversation at the house took place between the detective and his mother, and no *Miranda* warnings were given.

The detective then arrested Bates and took him to the police station where he was given *Miranda* warnings. Bates waived his *Miranda* rights in writing, State's Exhibit No. 1, and made a written statement admitting his involvement in the break-in. State's Exhibit No. 2. At trial, these exhibits were admitted into evidence over Bates' objection. The same objection raised at trial was also raised in Bates' Motion to Correct Errors. It was that due to Bates' limited intellectual capacity, his written statement was inadmissible because it was involuntary and unknowingly given.

During trial, a separate hearing on the voluntariness issue was conducted. At the conclusion of that hearing, the trial court found Bates' statements to have been given voluntarily. Thus, at trial, the objection was overruled, and later, the Motion to Correct Error was denied.

In his appellate brief, however, Bates presents us with a different reason why his written statement was inadmissible. He now argues that he was under arrest while the detective was in the house, and that he should have been given *Miranda* warnings before any statements were made. Bates urges us to conclude that the *Miranda* warnings given at the police station did not correct the error, and the written statement was merely a formalization of the previous oral statements.

We note, as did the State in its brief, the variance between Bates' argument at trial and on appeal. At trial Bates attacked the admissibility of his written statements based on voluntariness, and on appeal, he attacked the admissibility of his written statement because timely *Miranda* warnings were not administered.

■ It is well settled in our state that the grounds for objection to the admission of evidence asserted on appeal may not differ from those raised at trial. *Johnson v. State* (1985), Ind., 472 N.E.2d 892, 909–10, *reh. denied; Carman v. State* (1979), 272 Ind. 76, 396 N.E.2d 344. In the present case, the variance in Bates' arguments at trial and on appeal results in a waiver of the issue on appeal. *Johnson, supra; Carman, supra.*

Had Bates objected at trial on the basis of the State's failure to give the *Miranda* warnings at the house, the written statement would still have been admissible. In a recent case decided by the Supreme Court, the facts were strikingly close to the ones in the case at bar. In *Oregon v. Elstad* (1985), —— U.S. ——, 105 S.Ct. 1285, 84 L.Ed.2d 222 police went to the home of an 18 year old burglary suspect. There one policeman talked with the boy's mother while the other officer spoke with the boy. Before a *Miranda* warning was issued, in response to a statement made by the police officer, the boy admitted being at the scene of the burglary.

■ In *Elstad*, it was held that a procedural violation of *Miranda* does not trigger a "fruit of the poisonous tree" analysis. The Fifth Amendment's guarantee against self incrimination does not require that an unwarned custodial but voluntary statement obtained from a defendant must re-

sult in a Fourth Amendment suppression of a second statement given after the receipt of proper *Miranda* warnings and a valid waiver of those rights. *Id.*, 105 S.Ct. at 1296.

■ The teachings of *Elstad* apply to the instant case, although, on its facts, its application in the present case does not present us with a close question. Here, Bates denied whatever accusations the policeman made at the house, and he further testified that the officer did not question him there. We also note that there is no claim that an oral confession was made at the house. We therefore agree with the trial court that Bate's written statement was admissible.

## II.

### Directed Verdict

Bates next urges us to conclude that it was error for the trial court to deny his Motion for a Directed Verdict. He claims that since the State's charging information named the store manager as the owner of the property instead of the true owner, the State has failed to prove the charge against him.

■ One purpose of an indictment or information is to furnish the accused with such a description of the charge as will enable him to make a defense [3] and to assure that the defendant will not twice be put in jeopardy for the same crime. *Trotter v. State* (1981), Ind., 429 N.E.2d 637. Variance between indictment and proof is permitted if it does not affect an essential element of the offense so as to mislead the accused in the preparation of the defense, or subject him to double jeopardy. *Manna v. State* (1982), Ind., 440 N.E.2d 473.

In a case similar to the one at bar, *Reed v. State* (1982), Ind., 438 N.E.2d 704, *remand*, 441 N.E.2d 441, the defendant claimed that there was a material variance between the charge and proof at trial. In that case, the correct address of the burglarized property was listed, but the owners name was incorrect. No material variance was found in *Reed*, however, because there was no room for confusion with regard to the property broken into.

■ Here, Bates urges us to conclude that having the store manager's name on the indictment in place of the true owner's name was fatal, but he neglects to tell us how this technical variance misled his defense or created some risk of double jeopardy. Without this information, we are not shown that the alleged variance adversely affected his fundamental rights. *Thorne v. State* (1973), 260 Ind. 70, 292 N.E.2d 607. It is unlikely that Bates could make such a showing in this case since, in all other respects the information was accurate and of specific detail to avoid vagueness and possible double jeopardy.[4]

■ In addition, it is well settled that it is not essential that absolute ownership be in the person alleged to be the owner. In another burglary case, the charging affidavit incorrectly named the manager as the owner of the property. In addressing this alleged variance, our state Supreme Court wrote:

"It is sufficient to avoid a variance if the evidence shows that the person alleged to be the owner is in possession of the property as bailee, agent, trustee, executor or administrator. This rule has been reaffirmed many times in Indiana." (Citations omitted)

*Thomas v. State* (1970), 255 Ind. 131, 134, 263 N.E.2d 158, 160, *reh. denied.*

In the instant case, the store manager's agency relationship was contained in the Affidavit for Probable Cause and in uncontested testimony elicited at trial. It is our

---

**3.** If Bates wishes to challenge the sufficiency of the information, he should have done it by a Motion to Dismiss prior to trial, otherwise it is lost. *Carter v. State* (1984), Ind., 467 N.E.2d 694; *Terry v. State* (1984), Ind., 465 N.E.2d 1085.

**4.** Any confusion about the ownership of the property would have evaporated after an examination of the Affidavit for Probable Cause. In that document, the address of the grocery store was clearly printed, as well as the store manager's relationship to that property. *Reed, supra.*

conclusion then, that there was no variance, and that the trial court did not err by denying the Motion for a Directed Verdict. *See also, U.S. v. Hansen* (7th Cir.1983), 701 F.2d 1215 (no variance where indictment named "Allen County Bank and Trust" when name at time of offense was "Allen County State Bank"); *Johnson v. State* (1972), 257 Ind. 682, 278 N.E.2d 577, *reh. denied* (no variance between "Sr." and "Jr." in proof of ownership of burgled premises); *Caley v. State* (1975), 166 Ind. App. 679, 337 N.E.2d 571 (no variance where indictment listed April 30 as date of offense, while proof at trial showed April 29 to be the actual date).

### III.

#### Sufficiency of the Evidence

■ Bates also claims that there was insufficient evidence to sustain his conviction because of the variance in the charging information. Given our disposition of that issue in Part II, *supra;* the admissibility of Bates' written statement; and, the testimony of Lemuel Lane (one of the other two men who broke into the grocery store) implicating Bates in the crime, we are not persuaded by this argument.

Affirmed.

GARRARD and HOFFMAN, JJ., concur.